**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHARLES W. COLEMAN,** | * |
| **Plaintiff,** | * |
| **vs.** | * **Case No:** <u>**SKG-07-1711**</u> |
| **UNITED STATE OF AMERICA, ET. AL.** | * |
| **Defendant.** | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT UNITED**</u>
<u>**STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**</u>

**Now Comes** the Plaintiff, Charles W. Coleman, by and through his undersigned counsel, and hereby files this Memorandum in Opposition to the Defendant United States of America's (hereinafter "Defendant" or "Defendant USA's") Motion for Summary Judgment, as follows:

## I.   <u>BACKGROUND FACTS</u>

As a preliminary matter, Defendant's "background facts," as stated in its Motion for Summary Judgment, fail to provide an accurate summary of the record. Defendant merely sets forth one paragraph of facts on page 2 of its brief. Defendant states that "Plaintiff alleges that he slipped as a result of debris on the sidewalk," without stating and/or addressing the circumstances that resulted in the condition of the area upon which Plaintiff fell and the precise location of the fall. Upon consideration of the full breadth and scope of the facts, more fully set forth below, there are genuine disputes of material fact the Defendant was negligent, which resulted in the injuries sustained by the Plaintiff in this case.

1.     On May 17, 2006, after exiting the Damascus Post Office (hereinafter "Post Office"), the Plaintiff Charles W. Coleman (hereinafter "Coleman" or "Plaintiff"), after retrieving his mail, exited the front door and walked along the front sidewalk in the direction of the parking lot

where he parked his vehicle. Coleman walked to the end of the sidewalk to the point where the sidewalk meets the parking lot when he stepped on a "foreign" and "hard" substance on the sidewalk, which caused him to lose his balance. **(Coleman Depo. at 20, <u>Exhibit 3</u>).** He didn't immediately fall, but his forward momentum carried his next step into the parking lot walkway, and "apparently there was some accumulated things that were there that wouldn't give [him] steady balance, so [he] fell." **<u>Id.</u>**

2.     There are two known eyewitnesses to Coleman's fall. One of the witnesses, an older woman, walked up to Coleman and offered assistance, but left without leaving identification or a contact number. The other eyewitness, Charles Carter (hereinafter "Carter"), the President and owner/operator of the Defendant Shade Tree Lawn Care, Inc., a Defendant in this case, had been performing landscaping work under contract the very day of the fall, and testified he was 'ten feet' from Coleman and saw the slip and fall. **(Carter Depo. at 7, 43 line 5, 45, <u>Exhibit 4</u>).** Carter's testimony was identical to Coleman's description as to what occurred. Carter testified he looked at the ground where Coleman fell and observed what he described as the accumulation of a "stone-gravel-pebble" mixture of rock substances which caused the slip and fall.[1]

### <u>LOCATION OF THE COLEMAN'S SLIP AND FALL</u>

3.     The Plaintiff and Carter were both deposed in this case and their testimony identical as to the precise location of Coleman's fall. During his deposition, Carter drew a picture of said location, **<u>Exhibit 1</u>** below, and attached hereto. Coleman fell at the location indicated by Carter

---

[1] It is undisputed the slip and fall occurred in the area of the front walkway of the Post Office where it connects to the parking lot. In this section of the walkway, there is a receding grade curb height or curb riser, from the standard grade height to a zero grade surface (or flat surface), to accommodate physically challenged and wheelchair-mobile customers to safely transfer from the sidewalk to the parking lot on a zero grade surface. Please see **<u>Exhibit 1</u>**, attached hereto, which was the drawing of the Defendant Charles Carter of the precise location of the fall.

on his drawing with an arrow moving forward. Carter wrote on his deposition Exhibit: "Coleman stepped down Coleman fell."

4.      Carter testified that after the fall, the then Post Master of the Damascus Post Office, Leslie Arnow (hereinafter "Arnow") came outside with Carter, and both he and Arnow examined the location of Coleman's fall. Arnow then instructed Carter to clean up the accumulation of stone-gravel-pebble mixture in the area circled by Carter during his deposition below, which caused Plaintiff's fall. **(Carter Depo at 70, lines 18-19; page 71, lines 2-17, <u>Exhibit 4</u>)**.

**<u>Carter Deposition Exhibit 4, dated May 5, 2008 (attached as OPP.MSJ,  Exhibit 1</u>)**



5.      Carter testified that Coleman tripped and fell as a result of the accumulation of a stone-gravel-pebble mixture, which had been left on the surface of the Post Office parking lot as a treatment for vehicle tire traction on snow and ice. **(See Carter Affidavit, <u>Exhibit 2</u>, attached hereto)**. Carter testified that the Post Office used the stone-gravel-pebble mixture to cover ice. **(Depo., Charles Carter at 74, <u>Exhibit 4</u>).**

6.      The Post Office failed to clean-up the stone-gravel-pebble after the inclement weather, and remnants of same had accumulated throughout the parking lot which created a dangerous condition. According to Carter, it was this dangerous condition created by the Post Office, which caused Plaintiff's fall. **(Carter Affidavit, <u>Exhibit 2</u>, ¶3-5, attached hereto).**

7.      According to the Defendant's business records, the Post Office recorded an entry for treatment of "heavy" ice and snow conditions on or about March 15, 2006. Post Office records show that the snow and icy conditions were treated at that time.[2] Plaintiff's injury was on May 17, 2006, eight weeks later.

8.      Carter testified: "[j]ust as he [Coleman] tripped off the sidewalk, the edge of the curb into the pavement, that's the time that he slipped into the gravel and probably definitely created more

---

[2] Ms. Leslie Arnow, the Damascus Post Master, testified in pertinent part, as follows:

Q:      Do you dispute anything in the statement offered by Carter [Carter Affidavit, Exhibit 2].
**A:      "I would question the large amount of debris on the sidewalk. I know there was some. And, if [Carter] had been blowing trimmings and things like that, that would have affected gravel movement."**
Q:      So, you are saying that there was some debris around the sidewalk where Coleman had been walking -- on the sidewalk?
**A:      "On the sidewalk – and if this was by the handicapped ramp, <u>it just blows in steady</u>." (Arnow Depo at 19, <u>Exhibit 5</u>).**

            *       *       *       *

Q:      It says required delivery date 3/15/06 - can you explain what that means?
**A:      That would have been the date they had done some work.**
Q:      And, it looks like from the preceding page [Damascus Post Office Requisition Number 9254811] that it was 'plow lots, clear sidewalks, very icy'; agreed?
**A:      Yes.**
Q:      So, that was the work that was done?
**A:      Yes.**
Q:      So, we have only -- what looks to be about approximately only eight weeks before [Coleman's] injury, that's when this work was done, agreed?
**A:      Yes. (Arnow Depo at 47, <u>Exhibit 5</u>).**

of a fall, a hard fall. If it wasn't for the gravel in the parking lot, obviously, this probably wouldn't have happened." **(Carter Depo. at 45, <u>Exhibit 4</u>).**

9.      Carter testified: "[Coleman] could have probably caught his grip with his feet and he would have been fine instead of the loose gravel on the parking lot." **Id**. This testimony was repeated by Carter on pages 54-55, and again at pages 72-73 of his deposition.

10.      Contrary to Arnow's testimony, Carter testified he met with Arnow and was instructed to clean up the foreign debris that caused Coleman to slip and fall, as follows:

> **"Shortly after the fall, I went and told [Leslie Arnow, Post Master] about [Coleman's] fall. [I stated to her] 'you need to get somebody to sweep this parking lot, a sweeper service because it's a mess. I told her we could do it, but its going to cost a small fortune to clean up all this rock, all these rocks that they have.' She said 'she didn't have approval to do any work like that but if I could clean up certain areas for her.' I said 'sure.' The important areas, of course, are the walkway. The guy just fell. [Arnow stated] 'you need to do something out here.'" (Carter Depo. at 59). "[Arnow] didn't want to take money out of the budget or whatever. She didn't want to put money into it. So I cleaned up the gravel where the guy tripped. It was unsafe. It took an hour or two hours to just clean a small section up at her request. Id. Exhibit 4.**

11.      Carter testified he observed the area of the ground where Coleman fell. He was ten feet away and witnessed the fall. "[I] noticed a large amount of debris on the sidewalk where he fell down, which was a sandstone-gravel and pebble mixture, left over on the walkway surface from the **<u>past winter</u>**. **(Carter Affid. ¶3-5, <u>Exhibit 2</u> attached hereto).**

## <u>POST OFFICE PLACED  LAYER OF ROCK-MIXTURE THROUGHOUT PARKING LOT ON ICE AND SNOW TO AIDE WHEEL TRACTION BUT FAILED TO CLEAN SAME</u>

12.      It is undisputed fact that Carter's company, Defendant Shade Tree Lawn Care, Inc., was contracted to work at the said Post Office in a grounds-keeping capacity since 2001. Carter was intimately familiar with the grounds of the said Post Office, as he personally provided grounds

maintenance services at the said Post Office, including on the day of the incidents of this case, which included lawn mowing, trimming, edging, landscaping, trash pick-up, mulching, removal of mulch from beds, weeding, pruning, soil tests, fertilizing, and other yard services at the said Post Office from March, 2006 through December, 2006.

13.     Carter testified that the said "foreign debris" which caused Coleman's slip and fall, was spread throughout the parking lot of the Post Office to control ice and snow conditions and that he encountered same when he began the spring season of 2006. He further testified: "I'm not sure why they would do that. I am not sure why they put stone down -- I imagine it was because it was just ice." **(Carter Depo. at 74, <u>Exhibit 4</u>)**. He testified that the Post Office used the correct 'calcium chloride' melting ingredient, which left a blue stain on the sidewalk, but that a stone-gravel-pebble mixture was used to cover ice in the parking lot. **<u>Id</u>.**

14.     Carter testified that at the time of the incidents of this case: "the parking lot was totally covered from front to back with gravel." "You notice it immediately pulling up. Its like a beach. Between cars running over the main drag areas, you can see its crushed down into smaller pebbles and finer product around the corners and edges from where its starting to wash out and eventually moves to the edges of the curb." **(Carter Depo. at 76)**. Carter further testified: "I believe this debris formed a dangerous surface for walking. Some of my employees slipped on that surface while landscaping around that Post Office." **(Carter Affidavit, ¶3, <u>Exhibit 2</u>)**.

## II.

## MOTION FOR SUMMARY JUDGMENT STANDARD

The standard for assessing summary judgment motions is well-established. Summary judgment is proper only when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court may rely upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c).

In reviewing a motion for summary judgment, a court must view the facts and any inferences drawn from those facts in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 236 (4th Cir.1995). A fact is material when proof of its existence or nonexistence would affect the outcome of the case and is in dispute "when its existence or non-existence could lead a jury to different outcomes." Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir.2001).  "The nonmoving party is entitled to have [his] version of all that is disputed accepted, all conflicts resolved in [his] favor, and to have the benefit of all favorable legal theories invoked by the evidence." M & M  Med. Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir.1992).

## III. ARGUMENT AND LEGAL ANALYSIS

The law is well settled that to establish a prima facie case for negligence, the Plaintiff must show four elements: (1) a duty of care owed to the [Plaintiff] invitee of a business; (2) a breach of that duty; (3) causation; and (4) damages. *Hartford Cas. Ins. Co vs. Baltimore, 418 F. Supp. 2s 790, 792 (D.Md.2006)(citing Rosenblatt vs. Exxon Co. USA, 355 Md. 58, 76, 642 A.2d 180, 188 (1994)).* In this case, the Defendant challenges the Plaintiff's claim of negligence through the assertion of four arguments.

First, the Defendant argues that the Plaintiff failed to show that a dangerous condition existed or that the Defendant knew of the dangerous condition. (Motion at 7-8). Next, the Defendant argues that assuming the Defendant knew of the dangerous condition, the dangerous condition was open and obvious. (Motion at 10). Next, the Defendant asserts that Plaintiff cannot recover because he was contributorily negligent. (Motion at 12). Finally, the Defendant asserts that the co-Defendant, Shade Tree Lawn Care, Inc., was solely responsible for Plaintiff's injuries because it failed to maintain the sidewalk of the Post Office. (Motion at 16-17).

Upon a careful review of the facts and evidence adduced during the discovery of this case, each of the above assertions fail as a matter of fact and/or of law. There are genuine disputes of material fact which require a trial of this case. Each of the above assertions will be addressed as follows:

### A.   PLAINTIFF HAS ESTABLISHED THAT A DANGEROUS CONDITION EXISTED AND THE DEFENDANT KNEW AND/OR SHOULD HAVE KNOWN THAT SAME EXISTED

First, the Defendant argues that the Plaintiff failed to show that a dangerous condition existed or that the Defendant knew of the dangerous condition. (Motion at 7-8). This assertion has absolutely no merit. All three witnesses in this case that were deposed testified that the Post

Office had foreign debris and/or accumulation of stone-gravel-pebble mixture of rocks where Plaintiff fell.

Coleman testified that he walked to end of the sidewalk to the point where the sidewalk meets the parking lot when he stepped on a "foreign" "hard" substance on the sidewalk, which caused him to lose his balance. **(Plaintiff's Statement of Background Facts ¶¶1-2).** Coleman testified that he didn't immediately fall, but his forward momentum carried his next step into the sidewalk in the parking lot where there were "accumulated things that were there that wouldn't give [him] steady balance, so [he] fell." **Id.**

Carter testified that he was "ten feet" from Coleman and witnessed the entire slip and fall. Carter testified that Coleman tripped and fell as a result of the dangerous accumulation of a stone-gravel-pebble mixture, which had been left on surface of the Post Office parking lot as a treatment for vehicle tire traction on snow and ice. **(Plaintiff's Statement of Background Facts ¶2).** Carter testified that the Post Office used the stone-gravel-pebble mixture to cover ice. The Post Office failed to clean-up the stone-gravel-pebble after the inclement weather, and remnants of same had accumulated throughout the parking lot which created a dangerous condition. According to Carter, it was this dangerous condition created by the Post Office that caused Plaintiff's fall. **(Plaintiff's Statement of Background Facts ¶¶5-6).**

Carter testified the said "foreign debris" which caused Coleman's slip and fall, was spread throughout the parking lot of the Post Office to control ice and snow conditions. Carter testified he encountered the subject stone-gravel-pebble mixture when he began the spring season of 2006. Carter testified: "I'm not sure why they would do that. I am not sure why they put stone down -- I imagine it was because it was just ice." He testified that the Post Office used the correct 'calcium chloride' melting ingredient, which left a blue stain on the sidewalk, but that

a stone-gravel-pebble mixture was used to cover ice in the parking lot. **(Plaintiff's Statement of Background Facts ¶13).**

Carter further testified that at the time of the incidents of this case: "the parking lot was totally covered from front to back with gravel." "You notice it immediately pulling up. Its like a beach. Between cars running over the main drag areas, you can see its crushed down into smaller pebbles and finer product around the corners and edges from where its starting to wash out and eventually moves to the edges of the curb." Carter testified: "I believe this debris formed a dangerous surface for walking. Some of my employees slipped on that surface while landscaping around that Post Office." **(Plaintiff's Statement of Background Facts ¶14).**

Arnow, the former Post Master, testified that even she was aware of the dangerous condition. Indeed, Arnow, went fairly far in her testimony that the dangerous condition was well known. Upon asking her to review the Affidavit signed by Carter, **Exhibit 2** attached, Arnow stated she would only dispute the large amount of debris that Carter claimed was on the sidewalk. "I know there was some," she admitted. Arnow testified: "it just blows in **steady**." **(Plaintiff's Statement of Background Facts ¶7).**

Furthermore, based on Arnow's testimony and the business records of the said Post Office, inclement weather conditions on March 15, 2006, described as "heavy" snow and ice, resulted in the treatment of the grounds surrounding the Post Office. This was the last recorded treatment of snow and ice, before the slip and fall. Eight weeks is more than enough time for the Post Office to observe and correct this dangerous condition. According to Carter, who worked the grounds of the Post Office in March, 2006, April, 2006 and May, 2006, including the very day and time of the incidents of this case, on May 17, 2006, the "parking lot was totally covered from front to back with gravel." "You notice it immediately pulling up. Its like a beach. Between

cars running over the main drag areas, you can see its crushed down into smaller pebbles and finer product around the corners and edges from where its starting to wash out and eventually moves to the edges of the curb." Carter testified: "I believe this debris formed a dangerous surface for walking. My employees slipped on that surface while landscaping around that Post Office." **(Plaintiff's Statement of Background Facts ¶14).**

It should be noted the Defendant misrepresents facts to this Honorable Court when it argued that the "Plaintiff admitted he 'didn't know what he slipped on.'" (Motion at 9). Upon a careful reading, Coleman stated he was not sure whether he initially lost his balance from a stone-gravel-pebble rock mixture, mulch or a combination of same.

> Q:     And your testimony is that this debris consisted of a sandstone, gravel, pebble mixture, is that correct?
> **A:     Right, there was also some mulch mixed into it.**
> Q:     How do you know that that is what you slipped on?
> **A:     I don't know that I slipped on that. I know that it was there and it was the only thing that was there that could have caused me to slip. So some of those, you call them pebbles, I call them rocks, you know, some of them were larger than pebbles.  (Coleman Depo. at 44, <u>Exhibit 3</u>).**

*     *     *     *

Coleman testified that when he stood up, he was in pain and bleeding, and he wanted to go home to wash the blood off and treat his wounds. He drove about fifty feet and turned his vehicle around to notify management at the Post Office because his pain became much more severe. This was a span of "seconds." (Coleman Depo. at 21, 45-46). Coleman promptly met with Arnow and a claim was then recorded by the Defendant Post Office.  The record further reflects that Carter, a co-Defendant in this case, witnessed the entire slip and fall from a vantage point of 10 feet from the occurrence. **(Plaintiff's Statement of Background Facts ¶5-6, 11, 13-14).**

Carter testified that he observed the area of the ground where Coleman fell. He was ten feet away and witnessed the fall. "[I] noticed a large amount of debris on the sidewalk where he fell down, which was a sandstone-gravel and pebble mixture, left over on the walkway surface from the past winter. **(Plaintiff's Statement of Background Facts ¶11).**

The Defendant asserts that "because Plaintiff cannot identify the cause of his slip and fall, it follows that Plaintiff has provided 'no evidence that Defendant created or had actual knowledge of the condition which caused his fall.'" (Motion at 9, line 7-10). The first part of the Defendant's assertion is a misrepresentation of the record and the second part does not logically follow the first part, even if the first part were true. Plaintiff described his observations of the site of his fall upon his return, a matter of "seconds" later, and the site was described in even more detail by Carter who stated: "[I] noticed a large amount of debris on the sidewalk where he fell down, which was a sandstone-gravel and pebble mixture, left over on the walkway surface from the past winter." **(Plaintiff's Statement of Background Facts ¶11; Carter Affidavit ¶3, <u>Exhibit 2</u> attached).** Defendant's knowledge of the condition was confirmed by Arnow above and even if not confirmed by Arnow, the testimony of Carter, owner of the co-Defendant, as to the severity of the condition and duration of same, clearly indicates Defendant at least being on constructive notice.

The Defendant cites a litany of cases including <u>Landers vs. Aldi, Inc.</u>, 153 F.3d 698, 700 (8th Cir. 1998), claiming that case "substantially identical, involving a Plaintiff…who fell and 'did not actually see the small round object, nor see any stones near her feet after she fell.'" That fact pattern is not remotely similar to the instant case. In this case the Plaintiff describes the site in detail, observed same only seconds later upon his return. In addition, Carter, President of the co-Defendant Shade Tree Lawn Care, Inc., admits to witnessing the fall and surface where

Plaintiff fell. Clearly, in this case, the record is virtually dispositive that a dangerous condition existed as a result of the Defendant's failure to clean the large amount of debris on walkways where Plaintiff fell, which was a sandstone-gravel and pebble mixture, left over on the walkway from the winter.

For the Defendant to allow the known described condition to have existed over 8 weeks and continue to exist on the date of Plaintiff's fall, was clearly a breach of Defendant's duty of ordinary care to maintain the premises in a reasonably safe condition and it was a breach of that duty which resulted in Plaintiff's fall and injuries.

## B.    DANGEROUS CONDITION NOT "OPEN AND OBVIOUS"

Next, the Defendant argues that Plaintiff cannot recover for the injuries he sustained because the dangerous condition was "open and obvious." (Motion at 10). This assertion is contrary to Defendant's extensive argument of facts and law on pages 8 through 10, that no dangerous condition was present or known. The Defendant should be prohibited from taking the exact opposite position claiming it was "open and obvious."

Further, the "open and obvious" argument fails as the evidence is clear that the fall and injury occurred at the point that the walkway meets the parking area, an area not readily visible to Plaintiff as he proceeded from the post office.  (**Carter Drawing, <u>Exhibit 1</u>, Carter Affid., <u>Exhibit 2</u>¶3-4,** "…some of my employees slipped on the surface")**.**

Additionally, the Plaintiff's precautionary actions as he described more fully in the next section, coupled with Carter's complete description of the walkway, parking area and location of the debris, confirm that the path was generally clear until the point of meeting with the parking lot. There is no evidence, and the Defendant cannot point to any, that the debris at the parking lot was "open and obvious" to a person proceeding to the parking lot.

**C.**     **PLAINTIFF NOT CONTRIBUTORILY NEGLIGENT**

Next, the Defendant asserts that Plaintiff cannot recover because he was contributorily negligent. (Motion at 12). This assertion fails because Plaintiff's actions were reasonable under the circumstances, with Plaintiff exercising at least that degree of caution to be expected. There can be no dispute that the law does not require one to foresee an unexpected danger.

Plaintiff testified that on May 17, 2006, in the middle of the morning, a nice dry clear day, he drove uneventfully to the Damascus Post Office, parked his vehicle and walked up the sidewalk into the post office. (**Coleman Depo. at 12-14, <u>Exhibit 3</u>).** There is no evidence Plaintiff was in hurry, upset, or physically or mentally limited. After retrieving his mail, Plaintiff exited the front door and walked along the front sidewalk in the direction of the parking lot where he parked his vehicle. Plaintiff walked to the end of the sidewalk to the point where the sidewalk meets the parking lot when he stepped on a "foreign" and "hard" substance on the sidewalk, which caused him to lose his balance. (**Coleman Depo. at 20, <u>Exhibit 3</u>).** He didn't immediately fall, but his forward momentum carried his next step into the parking lot walkway, and "apparently there was some accumulated things that were there that wouldn't give [him] steady balance, so [he] fell." **<u>Id.</u>** Plaintiff was questioned extensively at his deposition concerning his actions as he exited the Post Office and proceeded toward his vehicle and it is clear that the Plaintiff exercised excessive precaution in not only scanning the path he would travel before proceeding, but also in scanning the area every "six to eight seconds" as he was proceeding, keeping in mind, Plaintiff is a 68 year old man in no hurry. Plaintiff testified under cross-examination by the Defendant USA as follows, on page 25-26 of his deposition:

18      Q.  When you came out of the post office the
19  first time, were you looking down at the sidewalk?
20      A.  No more than usual.  I mean when you walk
21  you don't always glue your eyes to the sidewalk.
22  I mean it was clear coming in, and there was no
23  reason to believe I had to take extra care going
24  out.
25      Q.  Where you walked into the post office,

**(Coleman Depo. at 25, <u>Exhibit 3</u> attached).**

1   were you looking down at the sidewalk?
2       A.  No, you just pretty much scan the whole
3   area.  There's no tractors in your way, so you
4   walk in.
5       Q.  When you say you weren't looking down at
6   the sidewalk no more than unusual, what do you
7   mean by no more than usual?
8       A.  Well, you know, when you get out of your
9   car you scan the area, see if there's any
10  obstacles or anything going on around you before
11  you -- it's normal behavior.
12      Q.  And did you scan the area when you walked
13  into the post office initially?
14      A.  Initially, sure.  Don't you?
15      Q.  And when you came out of the post office
16  the first time, did you scan the area?
17      A.  Yeah.
18      Q.  Okay.  Did you see anything?
19      A.  I saw nothing.  But again, you don't see
20  every little, minor thing.  You just see that it's
21  the same as it was when you went in, so.  Then

And on the same topic, the Plaintiff testified on pages 28-29 of his deposition:

```
17        Q.  What were you doing at the moment that
18   you slipped?
19        A.  Walking.
20        Q.  Where were you looking?
21        A.  Straight ahead at the automobile.
22        Q.  At your car?
23        A.  At my car, yeah.
24        Q.  So you were not looking at the ground?
25        A.  No.  You glance around at everything, you
```

```
                                        Page 29
1    know, it's called situational awareness, you know,
2    it's what they teach you when you learn to fly.
3    You've got to look at everything all the time, you
4    scan.  Every six to eight seconds you scan, that's
5    what people do.
6         Q.  Were you scanning every six to eight
7    seconds?
8         A.  Yeah, probably because that's what I
9    normally do.
10        Q.  And you mentioned when they teach you how
11   to fly.  Do you fly?
12        A.  Yes.
13        Q.  Are you a pilot?
14        A.  Yeah.
```

Plaintiff further testified that he held his mail in his left hand as he always did with his right hand free. (**Coleman Depo. at 27, <u>Exhibit 3</u>).**

As previously noted, Carter witnessed Plaintiff's fall and his testimony dispositively supports Plaintiff's account and evidences that Plaintiff could not have avoided the accident.

Carter testified consistent with the testimony of Plaintiff, that there was little or no debris on the sidewalk as Plaintiff exited the post office, but that there was "definitely" debris underneath Plaintiff which caused him to fall in the area described by Carter and he drew a picture of same. **(Carter Deposition <u>Exhibit 4</u>, attached hereto as <u>Exhibit 1;</u> see also Carter Depo at 7).** Mr. Carter testified that Plaintiff fell at the point that the sidewalk meets the parking lot, where an accumulation of the stone-gravel-pebble mixture of debris was located.

<u>**Carter Deposition Exhibit 4, dated May 5, 2008 (attached as OPP.MSJ, Exhibit 1**</u>)



Carter did not describe any unusual activity on Plaintiff's part to indicate other than a cautionary procession to his parked car. **(Plaintiff's Statement of Background Facts ¶11).** Furthermore, Plaintiff is certain that he fell as a result of debris. He testified that he believed the debris to be a "mixed sandstone-gravel-pebble mixture," but was not certain, as the area he observed included pieces of mulch and an employee was mulching in an area approximately 10 feet away from where he slipped and fell. He did testify that he did not believe the substance to

be mulch. **(Coleman Depo. at 64, <u>Exhibit 3</u>).**

Defendant argues that Plaintiff's uncertainty as to the nature of the debris in and of itself should result in Summary Judgment in its favor, conveniently forgetting that Carter, who witnessed the fall from only a number of feet away and immediately examined the fall site, identified the debris conclusively as the "gravel" and not mulch and that Plaintiff on returning to the site a matter of "seconds" after the fall to report his fall and injury saw the same debris described by Carter upon his return. **(Coleman Depo at 47, <u>Exhibit 3</u>).**

Lack of knowledge of the existence of the foreign debris noted as an accumulation of sand-gravel-pebble mixture below the sidewalk at the point that the sidewalk meets the parking lot, clearly not visible as Plaintiff's cautiously traveled along the walkway from the Post Office, can certainly not be deemed negligence.

**D.    <u>CO-DEFENDANT SHADE TREE LAWN CARE NOT SOLELY RESPONSIBLE FOR PLAINTIFF'S INJURIES</u>**

Finally, the Defendant asserts that the co-Defendant, Shade Tree Lawn Care, Inc., was solely responsible for Plaintiff's injuries because it failed to maintain the sidewalk of the Post Office, (Motion at 16-17), rendering Defendant USA immune.

What the Defendant USA does not bring to the Court's attention is the fact that it was negligent in allowing the known dangerous condition to exist for several weeks, in fact, months, apparently failing to remedy same either due to total lack of diligence, or due to the costs involved.

There is no dispute that co-Defendant Shade Tree Lawn Care, Inc., was contractually obligated to perform maintenance around the grounds of the Post Office, as well as landscaping and grass cutting, **(Carter Depo. at 67-68, <u>Exhibit 3</u>)**, but this does not absolve the Defendant

USA from its own continuing negligence.

The Post Office failed to clean up the stone-gravel-pebble debris after the inclement weather, and remnants of same had accumulated throughout the parking lot which created a dangerous condition. According to Carter, it was this dangerous condition created by the Post Office, which caused Plaintiff's fall. **(Plaintiff's Statement of Background Facts ¶6).** According to the Defendant's business records, the Post Office recorded an entry for treatment of "heavy" ice and snow conditions on or about March 15, 2006. Post Office records show that the snow and icy conditions were treated at that time.[3] Plaintiff's injury was on May 17, 2006, eight weeks later. **(Plaintiff's Statement of Background Facts ¶7).** Contrary to Arnow's testimony, Carter testified he met with Arnow and was instructed to clean up the foreign debris that caused Coleman to slip and fall, as follows:

> **"Shortly after the fall, I went and told [Leslie Arnow, Post Master] about [Coleman's] fall. [I stated to her] 'you need to get somebody to sweep this parking lot, a sweeper service because it's a mess. I told her we could do it, but its going to cost a small fortune to clean up all this rock, all these rocks that they have.' She said 'she didn't have approval to do any work like that but if I could clean up certain areas for her.' I said 'sure.' The important areas, of course, are the walkway. The guy just fell. [Arnow stated] 'you need to do something out here.'" (Carter Depo. at 59). "[Arnow] didn't want to take money out of the budget or whatever. She didn't want to put money into it.**

---

[3]  Ms. Leslie Arnow, the Damascus Post Master, testified in pertinent part, as follows:

Q:     Do you dispute anything in the statement offered by Carter [Carter Affidavit, Exhibit 2].

A:     **"I would question the large amount of debris on the sidewalk. I know there was some. And, if [Carter] had been blowing trimmings and things like that, that would have affected gravel movement."**

Q:     So, you are saying that there was some debris around the sidewalk where Coleman had been walking -- on the sidewalk?

A:     **"On the sidewalk – and if this was by the handicapped ramp, it just blows in steady." (Arnow Depo at 19).**

**So I cleaned up the gravel where the guy tripped. It was unsafe. It took an hour or two hours to just clean a small section up at her request. <u>Id</u>.  (Plaintiff's Statement of Background Facts ¶10).**

It is therefore for a trier of fact to decide if the Defendant USA was negligent in failing to cause the gravel and debris, present for at least 8 weeks and known and visible to those who worked at the site, to be removed and whether budgetary considerations played a part in the decision that left the dangerous condition present which resulted in Plaintiff's fall and injury.

**WHEREFORE**, the premises considered, the Plaintiff Charles Coleman requests this Honorable Court deny the Defendant United States of America's Motion for Summary Judgment for the reason that there are genuine disputes of material fact.

Respectively submitted,

/s/

_____
David M. Silbiger, Esq.
Courtside Building
110 East Lexington Street
Suite 100
Baltimore, Maryland 21202
(410) 685-1616

/s/

_____
Mark R. Millstein, Esq.
Courtside  Building
110 East Lexington Street
Suite 110
Baltimore, Maryland 21202
(410) 752-5920

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY on this 12th day of September, 2008, that a copy of the foregoing

documents was served via the Court *ecf* system, to the Defendants' counsel as follows:


      Alex S. Gordon, Esquire
      Assistant United States Attorney
      Office of the United States Attorney
      36 South Charles Street, Fourth Floor
      Baltimore, Maryland 21201

      Scott M. Hartinger, Esquire
      Ethridge, Quinn, McAuliffe,
         Rowan & Hartinger
      100 North Court Street
      Frederick, Maryland 21701
      Attorneys for the Defendant
        Shade Tree Lawn Care, Inc.


                    /s/
             _____
              Mark R. Millstein, Esq.